**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:21-cv-02626-MEH

JONATHAN POOL, on his own behalf and
on behalf of all others similarly situated,

Plaintiff,

v.

GREAT WESTERN BANK,

Defendant.

**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AGREEMENT**

COME NOW the Parties, who jointly move the Court pursuant to Federal Rule of Civil Procedure 23(e) to certify the proposed settlement classes and to approve their proposed settlement of this class action lawsuit. Specifically, the parties seek an Order:

1. Granting certification of a FLSA Collective Action Settlement Class defined as:

    all non-exempt employees who worked at any Great Western Bank branch location in the United States between September 28, 2018 and August 11, 2022, who timely file a FLSA Opt-in Form indicating their intention to opt-in to this action.

2. Granting certification to a Rule 23 Settlement Class defined as:

    all non-exempt employees employed by Great Western Bank who worked at a branch bank location in Colorado at any time between September 28, 2015 and August 11, 2022.

3. Appointing Jonathan Pool as Class Representative;

4. Appointing Andrew H. Turner as Class Counsel;

5. Granting preliminarily approval to the proposed Settlement Agreement (Exhibit 1);

6. Approving the attached FLSA Notice of Settlement and Opt-in Form (Exhibit 2);

7. Approving the attached Rule 23 Notice of Settlement and Exclusion Form (Exhibit 3)

8. Requiring the parties to disseminate the FLSA Notice and Rule 23 Notice to the appropriate Class Members in accordance with the Settlement Agreement; and

9. Setting a Final Fairness Hearing at the Court's earliest convenience but at least 150 days after the Court grants preliminary approval to the Agreement.

**I.     Facts And Procedural History**

This matter arises from the work of Plaintiff and others as non-exempt staff at Defendant Great Western Bank's retail banking branches between September 28, 2015 and the present. Plaintiff alleges that Defendant violated the Fair Labor Standards Act by failing to compensate him and other hourly employees for pre-shift time spent deactivating alarms and performing other security checks. Plaintiff alleges that Defendant failed to pay all required FLSA overtime wages because it did not compensate that pre-shift time, where the subject worker had worked at least 40 compensated hours in the workweek. Plaintiff alleges that Defendant violated Colorado state law both by failing to pay the pre-shift alarm deactivation and security time (in overtime and non-overtime weeks) and by failing to compensate the Plaintiff and others for required, compensated rest breaks which they were unable to take.

The parties engaged in extensive investigation, requesting, producing, exchanging and reviewing voluminous timekeeping and confidential security documents. The Representative Plaintiff and his counsel spent over fifty hours reviewing and discussing these documents and calculating damages based upon the information they contain. Ex. 4, Turner Decl. ¶15. After

extensive arms-length negotiations and a Court-supervised mediation, the parties reached the proposed settlement agreement, which is the subject of this motion.

Defendant has denied and continues to deny any fault, liability, or wrongdoing of any kind and dispute that the evidence developed supports in any way the claims asserted in the Litigation. Defendant has also denied and continues to deny each and all of the material claims and contentions alleged by the Named Plaintiff. Defendant has further denied and continues to deny that the Named Plaintiff or any Settlement Class Members were harmed or suffered any loss as a result of any of the conduct alleged in the Litigation.

As a result of this investigation, Plaintiff's counsel has determined that:

a. Defendant employed approximately 219 members of the alleged Rule 23 Class during the relevant time period.

b. Defendant employed approximately 1,770 potential members of the alleged FLSA Collective Action opt-in Class during the relevant time period.

c. Defendant's records document which Class Members performed pre-shift labor, its duration and frequency. On average, the duration of pre-shift work at issue was 5.94 minutes. Class Members performed the alleged pre-shift work an average of 0.24 times per worker per week.

d. Defendant's records document which Class Members were stationed at branch bank location staffed with fewer than three non-exempt employees. The Settlement Agreement assumes that any deprivation of compensated rest breaks happened in those locations staffed with fewer than three non-exempt employees.

With this information, the Parties engaged in an arm's-length settlement negotiation led by experienced counsel.

## II. Summary of the Settlement Terms

### A. Settlement Background and Procedure

The Settlement Agreement provides that, for purposes of settlement only, the Parties agree to conditionally certify a FLSA Collective Action Settlement Class defined as:

> all non-exempt employees who worked at any Great Western Bank branch location in the United States between September 28, 2018 and August 11, 2022, who timely file a FLSA Opt-in Form indicating their intention to opt-in to this action.

For purposes of settlement only, the Parties agree to conditionally certify a Rule 23 Settlement Class defined as:

> all non-exempt employees employed by Great Western Bank who worked at a branch bank location in Colorado at any time between September 28, 2015 and August 11, 2022.

The Parties agree that, for purposes of this Joint Motion only, the members of the proposed classes are sufficiently similarly situated for this Court to conditionally certify them. During the relevant time period, Defendant's payroll and timekeeping records show that each of the proposed class members was:

a. paid on an hourly basis;
b. compensated through one common payroll system; and
c. subject to common policies.

Certification of this similarly situated settlement class is appropriate pursuant to F.R.C.P. 23(b)(3).

Upon this Court conditionally certifying the proposed class and preliminarily approving the Settlement Agreement, the Settlement Administrator will send the FLSA Collective Action Notice to each individual eligible to opt-in. Ex. 1, Settlement Agreement pg. 13-15. This FLSA Notice provides the potential class member with a full and fair explanation of the action, the

proposed settlement and the procedure for opt-ing in. Ex. 2, FLSA Notice. Any remaining unclaimed funds in the FLSA Collective Action Fund up to $34,000 shall revert to Defendant five (5) days after the Conclusion of FLSA Opt-In Period. Following the Conclusion of the FLSA Opt-In Period, the parties will know what amount (if any) of unclaimed FLSA funds will be contributed to the Rule 23 Class Fund for distribution to Rule 23 Class Members. Ex. 1, Settlement Agreement at pgs. 14-15. Given this information, the parties will calculate the estimated minimum gross damages payable to each member of the Rule 23 Class. *Id.* The Rule 23 Class Notice (attached as Exhibit 2) informs each Class Member of the basic terms of the Settlement Agreement, as well as the estimated damages of the Class Member receiving the Class Notice. The Settlement Agreement also establishes a procedure for Class Members to object to or opt out of the proposed Rule 23 settlement class which would be subject to the Agreement. Ex. 1, Settlement Agreement pg. 15-17. There is no claim procedure which could suppress Rule 23 Class Members' receipt of settlement funds. The Settlement Agreement requires the Settlement Administrator to simply mail checks to the last known address of each Class Member who does not opt-out. Ex. 1, Settlement Agreement pgs. 20-21. No part of the Rule 23 Settlement Fund will revert to Defendant. *Id* at pg. 9. Defendant will pay all fees charged by the Settlement Administrator. Ex. 1, Settlement Agreement pg. 12. After the deduction of 1/3 in attorneys' fees and $15,000.00 in Representative Enhancement, all remaining Rule 23 Settlement Fund amounts will be distributed to class members via First Class Mail. Uncashed checks will be canceled, and the funds redistributed in a second check to those Rule 23 Class Members who do cash their first round checks. *Id* at pg. 9-10.

Following the close of the sixty (60) day Opt-out Period, the Parties will jointly move for Final Approval of the Settlement Agreement. Should the Settlement Agreement receive Final

Approval, the Defendant will mail Settlement Checks to Class Members within twenty-one days after the Settlement Agreement's Effective Date. Ex. 1, Settlement Agreement pg. 20.

### B. Settlement Terms

The Settlement Agreement provides that Defendant will make a payment of $575,000.00 which shall fully resolve, satisfy and encompass (1) the wage claims of the FLSA opt-in Class; (2) the wage claims of the alleged Rule 23 class; (2) a reasonable service award ($15,000) to the Class Representative Plaintiff, (3) Plaintiff's Counsel's reasonable attorney's fees and expenses constituting approximately 33% of the total settlement fund. Ex. 1, Settlement Agreement pg. 12. Each Class Member will receive a share of the settlement fund equal to his or her alleged damages as calculated from Defendant's payroll and timekeeping records.

### C. Settlement Methodology

The proposed Settlement Agreement compensates the Class Members for all damages arising from their class claims under the Fair Labor Standards Act ("FLSA"), the Colorado Overtime and Minimum Pay Standards Order (the "COMPS Order"), 7 C.C.R. 1103-1, (and predecessor Wage Orders), the Colorado Minimum Wage Act ("MWA"), C.R.S. § 8-6-101, *et. seq.* and the Colorado Wage Claim Act ("CWCA"), C.R.S. § 8-4-101, *et. seq*. The parties engaged in detailed review of Defendant's payroll and timekeeping documents to ascertain the value of these alleged violations of each class member. Ex. 4, Turner Decl. ¶¶ 15-17. Each of those alleged violations is compensated in its entirety. The formula for the compensation of pre-shift time and required rest breaks were applied uniformly to all members of the class. *Id.*

### 1. Compensation of Pre-Shift Time

The parties dispute the compensability of certain pre-shift alarm deactivation and branch opening work. The parties were able, however, to determine the duration and frequency of that work based upon extensive sampling of Defendant's records. On average, the duration of pre-shift work at issue was 5.94 minutes. Class Members performed the alleged pre-shift work an average of 0.24 times per worker per week. Ex. 4, Turner Decl. ¶16.

Those FLSA Collective Action Members who opt-in to this Settlement will be paid according to the following formula:

Gross Recovery = ((.02376)*(# of overtime workweeks worked)*(highest regular hourly rate * 1.5))*2

They will be paid 5.94 minutes for each of 0.24 assumed occurrences of pre-shift work per week in which that opt-in Plaintiff worked at least 40 previously-compensated hours for Defendant.[1] Ex. 4, Turner Decl. ¶16. They will benefit from the generous assumptions that: (a) every overtime workweek featured this relatively rare, uncompensated pre-shift work; (b) every occurrence of pre-shift work should be compensated at the overtime rate derived from their highest regular rate of pay; and (c) they are entitled to FLSA liquidated damages. Ex. 1, Settlement Agreement pg. 8.

All members of the Rule 23 Class will be paid for their Colorado wage claims based upon the same assumptions set forth above, except that all occurrences, not merely overtime occurrences, are compensable at that worker's applicable hourly rate. Rather than FLSA liquidated damages, former employee members of the Rule 23 class will be entitled to C.R.S. § 8-4-109(3)

---

[1] Plaintiff's FLSA claims are limited to those weeks in which unpaid time would be overtime. Plaintiff makes no claim for FLSA minimum wages.

penalties. The same duration and frequency assumptions applied to FLSA claimants will be applied to all members of the Rule 23 Class. Ex. 4, Turner Decl. ¶16.

2. **Compensation of Allegedly Denied Rest Breaks**

Colorado law requires employees be provided with compensated rest breaks of ten minutes for every four hours worked. 7 CCR 1103-1 ¶ 5.2. Where rest breaks are not provided, the worker must be paid for ten minutes per rest break denied. 7 CCR 1103-1 ¶ 5.2.4. Defendant's records document which Class Members were stationed at branch bank location staffed with fewer than three non-exempt employees. Plaintiff's investigation indicates that any deprivation of compensated rest breaks happened in those locations staffed with fewer than three non-exempt employees. Ex. 4, Turner Dec. ¶17. Defendant maintains that, regardless of the number of non-exempt employees staffed in any given location, all non-exempt employees were provided with rest breaks pursuant to Colorado law. The Settlement Agreement will compensate those Class Members stationed at branches with fewer than three non-exempt employees as though they received no breaks. They will be paid 10 minutes per each four hours worked at the applicable regular or overtime rate, depending on whether they worked at least forty (40) hours in the workweek in question. Ex. 4, Turner Dec. ¶17. This formula for the compensation of denied rest breaks will be applied uniformly to all members of the Rule 23 Class. *Id.*

3. **Attorneys' Fees & Costs**

The proposed Settlement Agreement would award $191,666.66 of the $575,000.00 total settlement amount to Plaintiff's counsel as attorney's fees and costs. Ex. 1, Settlement Agreement pg. 14 ¶D. "The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class." *Lucken Family Ltd.*

*Partnership, LLLP v. Ultra Resources, Inc.,* Civil Action No. 09–cv–01543–REB– KMT, 2010 WL 5387559, at *5–*6 (D.Colo. Dec. 22, 2010)(citing, *inter alia, Vaszlavik v. Storage Technology Corp.,* Case No. 95–B–2525, 2000 WL 1268824, *4 (D.Colo. Mar. 9, 2000) ("requested fee of 30% of the settlement is well within the ordinary range of common fund awards," and "[a] 30% common fund award is in the middle of the ordinary 20%– 50% range and is presumptively reasonable."). The attorneys' fees provided by the proposed Settlement Agreement are imminently reasonable and should be approved. Ex. 4, Turner Decl. ¶13.

    4.    **The Proposed Incentive Payment to the Class Representative Plaintiff is Appropriate.**

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments" as part of a class action settlement. *Staton v. Boeing*, 327 F.3d 938, 977 (9th Cir. 2003); *see also Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010) ("Courts have held that incentive awards are an efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class."). When evaluating the reasonableness of an incentive award, courts may consider factors such as "'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Staton,* 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

A $15,000 incentive award for the Class Representative Plaintiff is reasonable in light of the significant value he generated for the classes he represents. He met with Plaintiff's counsel on four occasions, reviewed voluminous documents Defendant produced and assisted counsel in

9

preparing for negotiation. Ex. 4, Turner Decl. ¶19. The $15,000.00 incentive award proposed is reasonable and justified. *See, Bagoue v. Developmental Pathways, Inc.*, 16-cv-01804, Doc. 149 (D. Colo. Oct. 28, 2020) (awarding $30,000 to a single class representative); *Valverde v. Xclusive Staffing, Inc.,* 16-cv-00671, Doc. 322 (D. Colo. July 20, 2020) (awarding $20,000 to each of five class representatives); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving service awards of $30,000, $15,000, and $7,500 to named plaintiffs in a wage and hour case) (citation omitted); *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) (approving incentive awards of $25,000 to each named plaintiff in a wage and hour case); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 participation award to a single class representative.).

**III.     The Court Should Preliminarily Approve the Proposed Settlement and Issue Notice.**

"The claims, issues, or defenses of a certified class--or a class proposed to be certified for purposes of settlement--may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). The parties have provided detailed information concerning their settlement. Fed. R. Civ. P. 23(e)(1)(A). The Court must now determine whether grounds justify giving notice of the Proposed Settlement to the class members, so that they may decide whether to participate in, opt-out of or object to the Proposed Agreement. Fed. R. Civ. P. 23(e)(1)(B). "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *Id*.

**A.     The Court Will Likely Approve the Proposed Settlement Agreement.**

"At the preliminary approval stage, the Court makes a preliminary evaluation of the fairness of the proposed settlement and determines whether the proposed settlement is within the range of possible approval, i.e. whether there is any reason not to notify class members of the proposed settlement and proceed with a fairness hearing." *Alexander v. BF Labs Inc.*, CV 14-2159-KHV, 2016 WL 5243412, at *9 (D. Kan. Sept. 22, 2016). Settlement approval is appropriate where:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Here, the class representative and class counsel have adequately represented the class. *Id.* Counsel and the Class Representative Plaintiff have diligently calculated and obtained relief for the class members on each of their claims. *See* pgs. 7-8 *supra*; Fed. R. Civ. P. 23(e)(2)(C). The Settlement Agreement was negotiated by experienced counsel and its terms are fair and reasonable. Counsel has litigated numerous wage law class actions in Colorado and around the country. Ex. 4, Turner Aff ¶¶ 7-11. In many of those cases, counsel have negotiated settlements of the plaintiffs' claims on both an individual and a class-wide basis, and are experienced in addressing the issues that arise in complex litigation and settlements. In his experience, Counsel believes the class could have done no better at trial. Ex. 4, Turner Decl. ¶18; Fed. R. Civ. P. 23(e)(2)(C)(i). *See Albu v. Delta Mech. Inc.*, No. 13-cv-03087-PAB-KMT, 2015 U.S. Dist. LEXIS 95485, at *9 (D. Colo. June 30, 2015) (citing *Lynn's Food Stores, Inc.*, 679 F.2d

at 1354) (noting that settlement agreements negotiated at arm's-length by experienced counsel are entitled to "a presumption of fairness").

The proposed Settlement Agreement is not the product of collusion. It was negotiated at arms-length and informed by extensive review of Defendant's voluminous records. *Id* at ¶15; Fed. R. Civ. P. 23(e)(2)(B). The proposed Settlement Agreement filed as Exhibit 1 is the lone agreement between the parties. Ex. 1, Settlement Agreement pg. 27; Fed. R. Civ. P. 23(e)(2)(C)(iv); Fed. R. Civ. P. 23(e)(3). The parties propose a maximally effective "method of distributing relief to the class" omitting any claims procedure through which class members could default, sending checks by mail to the address[2] of all class members who do not opt-out, and redistributing all funds in any uncashed checks back to those class members who have been reachable, rather than returning them to Defendant. Ex. 1, Settlement Agreement pg. 9-10.

The $191,666.66 award of attorney's fees is the standard 33%. *McNeely v. Natl'l Mobile Health Care, LLC*, No. CIV–07–933–M, 2008 WL 4816510, at *15 (W.D. Okla. Oct.27, 2008) (approving fees equal to 33% of total settlement). The amount of attorneys' fees awarded by the Settlement Agreement is reasonable. Fed. R. Civ. P. 23(e)(2)(C)(iii). The Agreement stipulates that attorney's fees be paid twenty days (20) after the Effective Date of the Agreement (when appeal rights lapse). Ex. 1, Settlement Agreement pg. 14 ¶D. Payments to class members are similarly due twenty-one (21) days after the Effective Date. Fed. R. Civ. P. 23(e)(2)(C)(iii).

As discussed at length above, the Settlement Agreement compensates every class claim through a single formula applicable to all class members. Ex. 4, Turner Decl. ¶¶16-17. "[T]he

---

[2] As their employers, Defendant was required to collect and maintain address information for all class members. 7 CCR 1101-3 ¶7.1.

proposal treats class members equitably relative to each other." Fed.R.Civ.P. 23(e)(2)(D). The proposed Settlement Agreement is fair, reasonable and adequate. The Court will likely be able to approve the proposal under Fed. R. Civ. P. 23(e)(2).

> **B.    The Court Will Likely Certify the Class For Purposes of Judgment on the Proposed Settlement Agreement.**

Prior to directing notice to class members, the Court must determine that it will likely be able to "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii).

At this stage, the Court should make the preliminary determination that the proposed Class satisfies the four requirements of Rule 23(a) and Rule 23(b)(3), subject to a final determination at the fairness hearing. *See* Manual for Complex Litigation § 21.632; *In re Motor Fuel Temperature Sales Prac. Litig.*, 258 F.R.D. 671, 678-80 (D. Kan. 2009); *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 125 (D. Colo. 2016). These requirements are addressed below.

> 1.    **Numerosit**y

Rule 23(a)(1) requires that a proposed settlement be "so numerous that joinder of all class members is impracticable." "There is no minimum numerical threshold which must be exceeded to satisfy this requirement. Rather, the nature of the particular case, and the nature of the proposed class, are key considerations in determining whether joinder of all parties is not practical." *Gianzero v. Wal-Mart Stores, Inc.*, No. 09-cv-00656-REB-BNB, 2010 U.S. Dist. LEXIS 38426, 2010 WL 1258071, at *2 (D. Colo. Mar. 29, 2010). Here, using Defendant's payroll records, the parties have identified 219 Class Members, a number that satisfies the numerosity requirement. *See, Bass v. PJCOMN Acquisition Corp.*, No. 09-cv-01614-REB-MEH, 2011 U.S. Dist. LEXIS 58352, 2011 WL 2149602, *5 (D. Colo. June 1, 2011) (joinder of between fifty and three hundred pizza delivery drivers is impractical).

### 2. Commonality

The commonality requirement is satisfied when there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "This inquiry requires the Court to find only whether common questions of law or fact exist." *In re Motor Fuel*, 258 F.R.D. at 679. Here, the settlement class members are joined by the common questions of law and fact including:

(a) Whether pre-shift alarm deactivation and security work was compensable time;

(b) Whether Defendant failed to pay all compensable time; and

(c) Whether Defendant failed to compensate class members for rest periods they were denied.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." The named plaintiff's claims need not be identical to those of other class members; instead this element "requires that representative plaintiffs possess the same interests and suffer the same injuries as the proposed class members." *Olenhouse v. Commodity Credit Corp.*, 136 F.R.D. 672, 680 (D. Kan. 1991). The typicality requirement is satisfied here because Plaintiff's claims arise from the same facts and are based on the same legal theories as the claims of members of the proposed settlement class.

For example, during the relevant time period, Defendant's payroll and timekeeping records and policy documents show that each of the proposed class members of was:

a. paid on an hourly basis;

b. compensated through one common payroll system; and

c. subject to common policies.

Ex. 4, Turner Decl. ¶15.

4. **Adequacy of Representation**

The adequacy requirement is satisfied when "the Representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Here, Plaintiff's counsel has diligently litigated this case since its inception, and has significant experience in wage and hour class actions in particular, including the resolution of complex cases through settlement. Ex. 4, Turner Decl. ¶¶ 6-11. Accordingly, Plaintiff's counsel is qualified to represent the interests of the Settlement Class. Likewise, there are no conflicts between the Class Representative Plaintiff and the settlement class. "Absent evidence to the contrary, a presumption of adequate representation is invoked. Any doubt regarding adequacy of representation should be resolved in favor of upholding the class, subject to later possible reconsideration, or the creation of subclasses initially." *Schwartz v. Celestial Seasonings*, 178 F.R.D. 545, 552 (D. Colo. 1998) (citing to 7A Charles A. Wright et al., *Federal Practice and Procedure*, §1765 at 269 (internal quotes and citations omitted)).

5. **Predominance And Superiority**

In addition to meeting the prerequisites for class certification under Rule 23(a), a class must also meet one of the three alternative requirements for treatment as a class action under Fed. R. Civ. P. 23(b). Here, Plaintiff seeks class certification under Fed. R. Civ. P. 23(b)(3). Class certification is proper under Rule 23(b)(3) where "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for the fair and efficient adjudication of the

controversy." A class action is superior to other available methods for the fair and efficient adjudication of this controversy because numerous identical lawsuits alleging identical causes of action would not serve the interests of judicial economy.

Additionally, absent Class Members to date have shown no interest in controlling the litigation of separate actions because no other litigation regarding this controversy has been commenced. The class action vehicle is also the superior method for adjudicating this controversy because it involves the relatively small claims of low-wage workers. Courts in this District have repeatedly recognized that a class action is superior where the small claims of parties with limited resources are otherwise unlikely to be pursued. *Belote v. Rivet Software, Inc.*, No. 12-cv-02792-WYD-MJW, 2013 U.S. Dist. LEXIS 74529, 2013 WL 2317243, at *2 (D. Colo. May 28, 2013); *Cook v. Rockwell Int'l Corp.*, 181 F.R.D. 473, 482 (D. Colo. 1998).

The Court will likely be able to "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii).

### C. The Court Should Approve the Proposed Notice of Class Action Settlement.

#### 1. The Proposed Settlement Procedure Provides Due Process Safeguards for the Absent Class Members.

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state" the categories of information set forth in Rule 23(c)(2)(B)(i)–(vii). If the Court grants preliminary approval of the Settlement, members of the Class will receive a personalized copy of the proposed Notice of Settlement of Class Action Lawsuit (attached to this Motion as Exhibit 3) by first-class mail.

The Settlement Administrator shall be provided with last known mailing address information for all putative class members, and will take customary measures to obtain more current address information; notices will be mailed by first-class mail. Ex. 1, Settlement Agreement, pgs. 14-15. The Settlement Administrator will also re-send the notices to any forwarding addresses and/or attempt to research new addresses from which notices are returned.

### 2. The Notice Clearly Explains the Settlement Terms

The proposed Notice, attached as Exhibit 3, provides detailed information regarding the claims asserted in this action, the terms and provisions of the proposed settlement, the settlement approval procedure, the procedure to file objections to the settlement and to be heard at the final fairness hearing, the claims process, and the procedure for opting out of the Settlement. Importantly, it informs each individual class member of their personal minimum share of settlement funds, so that they can make an informed decision about participating. Ex. 3, Rule 23 Notice pg. 2 ¶5.

Those class members who timely request to be excluded will not be included in the settlement. Those who do not opt out will release all claims under state wage and hour laws, excluding the Fair Labor Standards Act. Ex. 1, Settlement Agreement pg. 22-24. The proposed notice provides the class members with the precise language of the release to which they could become subject. Ex. 3, Rule 23 Notice pg. 2-3 ¶6. The notice should be approved as fair and accurate.

## IV. Conclusion

For the foregoing reasons, the parties' motion should be granted. The Court should enter an Order:

1. Granting certification to a FLSA Collective Action Settlement Class defined as:

   all non-exempt employees who worked at any Great Western Bank branch location in the United States between September 28, 2018 and August 11, 2022, who timely file a FLSA Opt-in Form indicating their intention to opt-in to this action.

2. Granting certification to a Rule 23 Settlement Class defined as:

   all non-exempt employees employed by Great Western Bank who worked at a branch bank location in Colorado at any time between September 28, 2015 and August 11, 2022.

3. Appointing Jonathan Pool as Class Representative;

4. Appointing Andrew H. Turner as Class Counsel;

5. Granting preliminarily approval to the proposed Settlement Agreement (Exhibit 1);

6. Approving the attached FLSA Notice of Settlement and Opt-in Form (Exhibit 2);

7. Approving the attached Rule 23 Notice of Settlement and Exclusion Form (Exhibit 3)

8. Requiring the parties to disseminate the FLSA Notice and Rule 23 Notice to the appropriate Class Members in accordance with the Settlement Agreement; and

9. Setting a Final Fairness Hearing at the Court's earliest convenience but at least 150 days after the Court grants preliminary approval to the Agreement.


| | |
|---|---|
| */s/ Andrew H. Turner* | */s/ Ryan P. Lessmann* |
| Andrew H. Turner | Ryan P. Lessmann |
| CO Atty. Reg. # 43869 | Jessica S. Reed-Baum |
| MILSTEIN TURNER, PLLC | 950 17th Street, Suite 2600 |
| 1490 Lafayette St. # 304 | Denver, Colorado 80202 |
| Denver, CO 80218 | Telephone: (303) 892-0404 |
| Tel: (303) 305-8230 | Facsimile: (303) 892-5575 |
| andrew@milsteinturner.com | Ryan.Lessmann@jacksonlewis.com |
| | Jessica.Reed-Baum@jacksonlewis.com |
| *Attorney for Plaintiff* | |
| | *Attorneys for Defendant* |

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing document on Defendants by electronically filing with the Clerk of Court, using the CM/ECF system which will send notification of such filing to all counsel of record *via* e-mail.

This 17th day of August, 2022.

*/s/ Andrew H. Turner*
Counsel for Plaintiffs